IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HOWARD L. HILL, II, | : |
| Plaintiff | : |
| v. | : CIVIL NO. 3:CV-13-2442 |
| Z. EDINGER, ET AL., | : (Judge Conaboy) |
| Defendants | : |

_____

**MEMORANDUM**
**Background**

Howard L. Hill, II (Plaintiff), an inmate presently confined at the Allenwood United States Penitentiary, White Deer, Pennsylvania (USP-Allenwood)[1] initiated this pro se Bivens[2] type civil rights action regarding his prior confinement at the United States Penitentiary, Lewisburg, Pennsylvania (USP-Lewisburg). An Amended Complaint (Doc. 35) was subsequently filed.

Named as Defendants are the following USP-Lewisburg officials: Correctional Officers Zachary Edinger, K. Kemmerer, and E. Good; Lieutenants Justin Foura, J. Seeba, and S. Prutzman; as well as Counselor J. Vayda. Defendants Good, Kemmerer, Prutzman,

---

1. See Doc. 73.

2. Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). Bivens stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." Butz v. Economou, 438 U.S. 478, 504 (1978).

1

and Vayda are additionally described as being members of a prison Use of Force Team.

Plaintiff describes himself as suffering from mental health problems including severe depression, borderline personality disorder, and a history of suicide attempts. See Doc. 35, ¶ 12 & 14. According to the Amended Complaint, Plaintiff attempted suicide while confined at USP-Lewisburg on May 25, 2013 by overdosing on pills.

Plaintiff contends that upon being notified of his overdose by his cellmate and viewing the inmate lying on the floor of his cell, CO Edinger contacted Lieutenant Foura and a call was made for assistance from the Use of Force Team. See id. at ¶ 16. Plaintiff alleges that although he was lying unconscious and unresponsive on the floor of his cell, Lieutenants Foura and Seeba authorized the use of chemical agents, OC gas, against him. Hill adds that the members of the Use of Force team did not intervene to deter the use of the chemical agent.

The Amended Complaint next contends that Defendant Edinger failed to implement the procedures set forth in the prison's Suicide Prevention Program. In addition, the other Defendants allegedly failed to act in accordance with the prison's Use of Force procedures. See id. at ¶ 20.

Plaintiff concludes that the conduct of Defendants constituted use of unnecessary and excessive force, cruel and unusual punishment, and deliberate indifference in violation of his rights under the Eighth and Fourteenth Amendments. Hill seeks

injunctive and declaratory relief as well as compensatory and punitive damages.

Presently pending is Defendants' motion seeking entry of summary judgment. See Doc. 52. The Plaintiff has filed an opposing brief which includes a counterclaim for summary judgment.[3] See Doc. 59.

## Discussion

Defendants claim entitlement to entry of summary judgment on the grounds that Hill's claim of excessive force fails (Doc. 56, p. 19); a viable claim of deliberate indifference has not been alleged (see id. at p. 25); and they are entitled to qualified immunity (see id.).

**Summary Judgment Standard**

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the

---

3. However, since Plaintiff has not presented the Court with any arguments whatsoever as to why he is entitled to entry of summary judgment, his counterclaim for summary judgment will be denied.

3

non-moving party. Id. at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Celotex, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

4

**Factual Submissions**

Defendants assert that during the relevant time period Plaintiff was housed in the USP-Lewisburg Special Management Unit (SMU) which houses prisoners who require greater supervision because of past disruptive behavior and/or serious disciplinary misconduct.  They have submitted supporting documents showing that Hill received twenty-eight (28) prior disciplinary charges and is serving a sentence for first degree felony murder.

In a declaration submitted under penalty of perjury, CO Edinger states that while returning prisoners back to their cells following recreation he observed Plaintiff lying on the floor of his SMU cell at approximately 9:53 a.m. on May 25, 2012. See  Doc. 57-1, ¶ 3.  Edinger does not indicate that any prisoner told him that Hill had overdosed.

When the inmate did not respond to verbal orders from Edinger to walk to the cell door and submit to restraints, the officer admits that he called Lieutenant Foura for assistance. Edinger adds that after Hill remained unresponsive to numerous verbal orders given by Foura, the Lieutenant administered a single two second burst from his OC gas dispenser with negative results. See id. at ¶ 4.

According to Edinger, Lieutenant Seeba who had also arrived administered a second two second burst of OC gas "with positive results."  Id. at ¶ 4.  Specifically, Hill stood up and submitted to placement in hand restraints and was removed from his cell.  CO Edinger concludes that because Hill was not responding to staff

5

directives and it was unclear why the prisoner was lying on his cell floor "staff used the amount of physical force necessary to ensure both inmate Hill's safety, as well as the safety of the other responding staff members." Id. at ¶ 6.

Plaintiff has submitted a declaration under penalty of perjury by his cell mate, Inmate Darrell Parks. See Doc. 60, Exhibit 3. Parks states that while attending recreation on the morning of May 25, 2013 he informed CO Edinger that his cellmate, Hill, was consuming a lot of pills. See id. at ¶ 8. Upon returning to his cell, Parks avers that he saw Plaintiff lying in a fetal position on the floor and that correctional staff attempted to have his cellmate submit to hand restraints. Based upon Parks' declaration, there is a factual dispute as to whether Defendant Edinger was informed that Plaintiff had taken an overdose of pills. However, it is noted that is no assertion or indication in the record that any other Defendant had knowledge that Plaintiff had overdosed when they responded to the situation.

Defendants have also submitted a declaration by Lieutenant Foura which reiterates that two short bursts of OC gas were employed only after Hill refused to respond to verbal directives and because it was unclear as to why the prisoner was lying on the floor of his SMU cell. Foura adds that after being placed in restraints, the Plaintiff was escorted to the showers so that he could be decontaminated and medically assessed. See id. at Exhibit 2, ¶ 6. Foura similarly opines that the amount of physical force and use of a chemical agent exercised against the Plaintiff was

6

appropriate under the circumstances and in compliance with Bureau of Prison (BOP) policy.[4]

A written statement by Defendant Vadya, who videotaped the incident as part of his duties as a member of the Use of Force team provides that the incident began at approximately 9:56 a.m. and concluded at 10:08 a.m. when the transfer of the Plaintiff to the shower was completed. See id. at Attachment O.  It is additionally noted that in his opposing brief Plaintiff admits that he is unaware of what transpired during the May 25, 2013 incident. See Doc. 59, p. 3, ¶ III.

Also submitted for consideration by Defendants is a declaration under penalty of perjury by USP-Lewisburg Chief Psychologist Jessica Sage.  See id. at Exhibit 3.  Sage states that ten (10) days prior to the incident at issue, on May 15, 2012 Hill was seen by the prison's mental health services staff during routine rounds and the report prepared as a result indicated that "Hill did not display any characteristics of an Active Axis I mental health difficulty or exhibit any other functional impairment requiring an increase in treatment in supervision." Id. at ¶ 4 and Attachment C, p. 22.

Sage further notes Plaintiff was not on active suicide watch prior to the May 25, 2012 incident and the Bureau of Prisons (BOP) Suicide Prevention Program requires a segregation officer who

---

4. A written statement prepared by Foura regarding the incident notes that although lying on the floor of his cell the Plaintiff was breathing on his own.  See id., at Attachment E, p. 26.

observes an inmate attempting suicide to call for back up before entering the cell.  See id. at ¶ 6.

Defendants have additionally submitted a copy of a written medical assessment prepared by a physician following the incident. The doctor notes that Plaintiff stated that he took twenty (20) pills of his own prescribed medication as well as ten (10) other pink pills.  See id. at Attachment H, p. 31.  The doctor further opined that it was unclear as to whether this was a legitimate suicide attempt or just a gesture for attention.  See id. at p. 32.

A Suicide Risk assessment prepared by Doctor Kent Cannon on the date of the incident (Attachment N) indicates that Plaintiff ingested over 20 Zoloft pills and that the overall risk of suicide was low.  Doctor Cannon noted that Hill had a history of similar acting out (feigning suicide) when he became unhappy and that his conduct was an attempt to leverage a psychologist into taking him out of his SMU cell for secondary gains.  See id.

USP-Lewisburg Attorney Advisor Michael Figgsganter has also submitted a declaration stating that the BOP's Use of Force procedures provide that the use of chemical agents is appropriate when an inmate cannot be approached in a safe manner.  See id., Exhibit 4, ¶ 4.  Attorney Figgsganter adds that a full medical assessment performed on Plaintiff following the incident did not indicate that he suffered any injuries as a result of the actions taken by staff on May 25, 2012.  Figgsganter acknowledges that Plaintiff was issued a misconduct as a result of the incident charging him with self-mutilation, interfering with staff duties,

8

refusing an order, and misuse of medication.  A copy of that misconduct report shows that a prison physician determined Plaintiff had abused prescribed pills that were given to him.  <u>See</u> <u>id</u>. Attachment D, p. 23.  It is also noted that a copy of the resulting Disciplinary Hearing Report states that Plaintiff denied attempting suicide during his misconduct hearing.  <u>See</u> Attachment L.

**<u>Excessive Force</u>**

A correctional officer's use of force in order to constitute cruel and unusual punishment, must involve the "unnecessary and wanton infliction of pain."  <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986).  "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize[s] that conduct prohibited by the Cruel and Unusual Punishment Clause, whether the conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." <u>Id</u>.

In a later ruling, the United States Supreme Court recognized that the use of force may constitute cruel and unusual punishment even if the prisoner does not sustain "significant" injuries.  <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992).  The core judicial inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically to cause harm." <u>Fuentes v. Wagner</u>, 206 F.3d 335, 345 (3d Cir.), <u>cert.</u> <u>denied</u>, 531 U.S. 821(2000); <u>Brooks v. Kyler</u>, 204

F.3d 102, 106 (3d Cir. 2000)(even a de minimis use of force, if repugnant to the conscience of mankind, may be constitutionally significant).  As explained in Fuentes:

> Resolution of an Eighth Amendment claim therefore 'mandate[s] an inquiry into a prison official's state of mind.'  Two considerations define that inquiry.  We must first determine if the deprivation was sufficiently serious to fall within the Eighth Amendment's zone of protections.  If not, our inquiry is at an end.  In other words, we must determine if they were motivated by a desire to inflict unnecessary and wanton pain.  'What is necessary to establish an "unnecessary and wanton infliction of pain. . ." varies according to the nature of the alleged constitutional violation.'However, if the deprivation is sufficiently serious, we must determine if the officials acted with a sufficiently culpable state of mind.

Fuentes, 206 F.3d at 344.

Defendants assert that they are entitled to summary judgment because their actions, use of OC spray,  did not constitute excessive force.  The use of mace-type sprays by correctional officials has been found to be constitutionally acceptable under certain circumstances.  See Banks v. Mozingo, 423 Fed. Appx. 123, 126  (3d Cir. 2011); Travillion v. Leon, 248 Fed. Appx. 3563 (3d Cir. 2007).  Similarly, the BOP's Use of Force and Application of Restraints Policy clearly authorizes the use of chemical agents when a delay in bringing the situation under control would constitute a serious hazard to the prisoner or others.

10

Based upon the undisputed facts of this matter, the responding correctional staff was faced with a situation involving a prisoner with a history of disruptive behavior and which required an immediate response.[5]  Although Plaintiff contends that his disciplinary history was not serious, it has been established that Hill received disciplinary infractions of assaulting staff without serious injury, being in an unauthorized area, refusing to obey an order, fighting with another inmate, and possessing a dangerous weapon.  As such, and noting that it is undisputed that Plaintiff had mental health issues, was housed in the SMU, and was serving a sentence for first degree felony murder, this Court concurs with Defendants' description of Hill as being a prisoner who required cautious treatment.

Second, the responding correctional officers initially attempted to verbally resolve the situation.  It is also noted that the use of chemical agents was not prolonged or excessive but consisted only of two bursts of OC gas.  Furthermore, there is no claim or facts establishing that Plaintiff suffered any injury as a result of the employment of chemical agents.[6]

---

5.  The Court again recognizes that there is a factual dispute as to whether CO Edinger was told that Plaintiff had attempted suicide as well as whether Hill was unconscious or purposefully being unresponsive.

6.  Although not dispositive, the degree or lack of injury is still a relevant factor in the determination of the excessiveness of the force used.  See Brooks, 204 F.3d at 106.  However, it would be erroneous to narrow the inquiry to the absence of serious injuries.  See Smith v. Mensinger, No. 99-1382, 2002 WL 1283688 * 5 (3d. Cir. June 11, 2002).
    Plaintiff's opposing brief alleges for the first time that
(continued...)

11

Given those undisputed circumstances, there is simply no factual support for a claim under Whitley and Fuentes that the undisputed limited use of OC gas was motivated by a desire to inflict unnecessary and wanton pain. Rather, the brief employment of OC gas was clearly a good faith effort and reasonable response to a potentially dangerous situation which did not rise to the level of a constitutional excessive force violation.

**Deliberate Indifference**

Plaintiff alleges that the failure of Defendant members of the Use of Force Team to prevent Lieutenants Foura and Seeba from employing chemical agents constituted a failure to protect his safety. Defendants argue that there was no deliberate indifference to Plaintiff's safety since the use of OC spray did not pose a serious risk of substantial harm. See Doc. 56, p. 23.

The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care and personal safety. See Farmer v. Brennan, 511 U.S. 825, 832 (1994); Helling v. McKinney, 509 U.S. 25, 31 (1993). Under Farmer, an inmate must surmount the high

---

6. (...continued)
he suffered skin irritation due to not being thoroughly decontaminated. See Doc. 59, p. 8. The claim of inadequate decontamination has not been properly raised before this Court. However, Hill concedes that the alleged skin irritation only lasted a few days. The inmate also admits that he does not suffer from asthma or any similar condition which would have been aggravated by use of OC gas. See id. at p. 12.

12

hurdle of showing that a prison official actually knew or was aware of a substantial risk to inmate safety and deliberately disregarded that risk.  Beers-Capitol v. Whetzel, 256 F. 3d 120, 125 (3d Cir. 2001).  This requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837.

It is well established that a prison official who witnesses a prisoner being physically assaulted by another corrections officer but who fails to take any steps to protect the prisoner violates the Eighth Amendment.  Smith, 2002 WL 1283688 at *7-8; Estate of Davis v. Delo, 115 F.3d 1388, 1395-96 (8th Cir. 1997); Gaudreault v. Salem, 923 F.2d 203, 207 n. 3 (1st Cir.), cert. denied, 500 U.S. 956 (1990) ("an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable . . . ."); O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988) ("a law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers."); Laury v. Greenfield, 87 F. Supp.2d 1210, 1216 (D. Kan. 2000); Ruble v. King, 911 F. Supp. 1544, 1555-56 (N.D. Ga. 1995).

As previously discussed, this is a case where correctional officers were facing a situation which required immediate but cautious attention since it involved an SMU prisoner with a history of mental health problems and disciplinary violations.  Moreover,

13

this Court has determined that the two bursts of OC spray did not constitute excessive force and the Plaintiff contends only that he suffered short term skin irritation as a result of the use of OC gas.

The undisputed facts show that this was not a situation where correctional staff were aware that the limited use of OC gas would pose a sufficiently serious risk of danger to the inmate and they consciously disregarded said risk.  Rather, this was a incidnet requiring a quick but safe response to a potentially dangerous situation involving an inmate who required cautious treatment because of his background.  Based upon an application of Farmer to those considerations, Defendants are entitled to entry of summary judgment on the failure to protect claim.

**Qualified Immunity**

Qualified immunity is an affirmative defense which must be pleaded by the defendant official.  Verney v. Pennsylvania Turnpike Comm'n, 881 F. Supp. 145, 149 (M.D. Pa. 1995).  In Harlow v. Fitzgerald, 457 U.S. 800 (1982), the United States Supreme Court held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Id. at 818; Sherwood v. Mulvihill, 113 F.3d 396, 398-99 (3d Cir. 1997); Showers v. Spangler, 957 F. Supp. 584, 589 (M.D. Pa. 1997).  It has also been held that "qualified immunity is

14

coextensive for suits brought against state officials under 42 U.S.C. § 1983 (1982), and for suits brought directly under the Constitution against federal officials." People of Three Mile Island v. Nuclear Regulatory Commissioners, 747 F.2d 139, 144 n.9 (3d Cir. 1984) (citing Butz v. Economou, 438 U.S. 478, 504 (1978)).

The United States Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001), subsequently established a two part test for analyzing qualified immunity claims. See also Curley v. Klem, 298 F.3d 271 (3d Cir. 2002); Bennett v. Murphy, 274 F.3d 133 (3d Cir. 2002). The initial inquiry in a qualified immunity examination is whether "the facts taken in the light most favorable to the plaintiff show a constitutional violation." Bennett, 274 F.3d at 136. The second prong requires a determination as to whether the constitutional right at issue was clearly established. If so, then a court must inquire as to "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 201. A determination that the conduct violated a clearly established constitutional right precludes the granting of qualified immunity.

As discussed above, this Court has determined that the Amended Complaint has not sufficiently alleged viable claims of either use of excessive force or failure to protect a plaintiff from a serious risk of harm from employment of OC spray. For the same reasons previously discussed, it is equally apparent to this Court that the conduct attributed to the Defendant correctional officers would not be believed to be unlawful by a reasonable

15

officer confronting the same situation.  Accordingly a finding that the Defendants are entitled to qualified immunity is also appropriate.  An appropriate Order will enter.


                              S/Richard P. Conaboy_____
                              RICHARD P. CONABOY
                              United States District Judge



DATED: MARCH 13, 2015

16